592 A.2d 1349

**GENERAL EQUIPMENT MANUFACTURERS, Appellee,**

v.

**WESTFIELD INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 27, 1991.

Filed June 20, 1991.

James R. Cooney, Pittsburgh, for appellant.

Thomas H. Welsh, Pittsburgh, for appellee.

Before DEL SOLE, FORD ELLIOTT and BROSKY, JJ.

DEL SOLE, Judge:

This appeal results from a jury verdict in favor of General Equipment Manufacturers, Inc. [Gem] which sued Westfield Insurance Co., [Westfield], which is the surety on the bond of Coco Bros. [Coco], a general contractor. The jury awarded $78,486.00 to Gem to which was added interest.

Gem brought this action on the unpaid amount on it's contract with Coco, which was engaged by the School Board of Pittsburgh to renovate the Oliver High School. Coco employed a number of subcontractors, including Gem, on this project. In late March or early April of 1987, the Board dismissed Coco as general contractor, which was binding on the sub-contractors, who could proceed no further in completing the renovations. The entire contract between Gem and Coco was worth $240,000.00, and prior to the time Coco was terminated, Gem had billed Coco in the sum of $106,- 552.00 for work and materials provided to the project. $28,065 had been paid to Gem by Coco, leaving a balance of $78,486.00 unpaid.

On appeal, Westfield raises seven issues for our consideration. Most of these argue that Gem failed to make out a case for payment of the balance submitted, and that certain evidence and defenses were erroneously excluded from consideration by the jury. The jury found for Gem, and the trial court, in its opinion and order, following post-trial motions, held that, "it was simply a matter of whether Gem did the work for which it seeks payment." Westfield, in contrast, invokes general principles of contract law, and claims certain defenses based on these same principles. Gem, however, argues that the language of the surety bond issued by Westfield for Coco is determinative of the surety's obligation,[1] and they cite the following language, from the surety bond:

1. The Dissent argues that there is nothing ambiguous in the language of the statute requiring interpretation by the Commonwealth Court. We agree that there is no ambiguity, but only because the statute completely omits any reference to the defenses available to the surety, or the evidence sufficient to show proof of costs, the very issues raised in this appeal. Therefore, on these issues where there is no settled

Every person, firm, or partnership, association or corporation who, whether as subcontractor or other furnished materials or supplied or performed labor or furnished machinery for use in the prosecution of the work provided, and who has not been paid therefor, may sue on this bond in accordance with the provisions of [the] School Code of 1949, as amended and/or (b) the Public Works Contractor's Bond Law of 1967 ...

Thus, Westfield's surety bond incorporates Pennsylvania's Public Works Contractors' Bond Law and the bond requirements of the School Code of 1949, and the proof required for payment, and the defenses available to Westfield, are thus determined by interpreting the provisions of these Commonwealth statutes. 8 Pa.S.A. § 194 states in pertinent part:

[A]ny claimant who has performed labor or furnished material in the prosecution of the work provided for in any contract for which a payment bond has been given ... and who has not been paid in full therefore ... may bring an action in assumpsit to recover any amount due him for such labor or material, and may prosecute such action to final judgment and have execution on the judgment. 8 Pa.S.A. § 194(a)

Because the instant appeal raises an issue involving the interpretation and application of statutes which regulates the affairs of a political subdivision, namely the School Board, we find that it is appropriate to transfer this case to the jurisdiction of the Commonwealth Court.

law, the courts must construe the statutes in question in order to decide the questions presented. As we said, *en banc,* in *Valley Forge Industries v. Armand Construction, Inc.,* 248 Pa.Super. 53, 60–61, 374 A.2d 1312 (1977), when,

[t]he question presented is a matter of important public policy affecting existing and future bonds on thousands of public works projects ... it would be far better for this Court to defer to the Commonwealth Court, which has been designated by the legislature as the appropriate forum for resolving disputes arising out of an interpretation of statutes regulating the affairs of local governments and agencies, at least until the law becomes settled in this particular area.

The applicable section of the Judicial Code which establishes the jurisdiction of the Commonwealth Court provides:

§ 762  Appeals from the Courts of Common Pleas

(a) General Rule.—Except as provided in subsection (v), the Commonwealth Court shall have *exclusive jurisdiction* of appeals from final orders of the courts of common pleas in the following cases:

(4) Local government civil and criminal matters.—

(i) All actions or proceedings ... where is drawn in question the application, interpretation or enforcement of any:

(A) statute regulating the affairs of political subdivisions, municipality and other local authorities or other public corporations or the officers, employees or agents thereof ... 42 Pa.C.A. § 762(a)(4)(i)(A) [Emphasis added].

In *United Plate Glass v. Metal Trims Industries*, 351 Pa.Super. 225, 505 A.2d 613, 616 (1986), where the issue concerned the statute of limitations of a payment bond which was issued in conformance with the Public Works Bond Law, we transferred the case to the Commonwealth Court. *See also, Valley Forge Industries v. Armand Cons.*, 248 Pa.Super. 53, 374 A.2d 1312 (1977). We held that:

the division of labor between this court and our sister court would be served rather than disrupted if the Commonwealth Court heard all appeals involving the application and interpretation of the Pennsylvania Public Work Contractors' Bond Law. *Id.*, 505 A.2d at 616.

Furthermore, in an earlier case where the parties were Coco Brothers, Inc. and the Board of Education, and the same construction project was in dispute, we again transferred the case to the Commonwealth Court. In this case the issue was whether the School Board properly offset various arbitration awards against each other. We held that 53 P.S. § 7232–7234 regulated the affairs of the school district in this matter, and when they were called in to question, it was for the Commonwealth Court to determine its merits. *Coco Bros, Inc. v. Board of Public Education of the*

*School District of Pittsburgh,* 383 Pa.Super. 29, 556 A.2d 412 (1989).

We have held that in order to guard against the possibility that two inconsistent lines of interpretation might develop between the two courts concerning the statute of limitations of the Public Works Contractors' Bond Law, it was best to transfer the case to Commonwealth Court, *United Plate Glass, supra.,* 505 A.2d at 616. Similarly, here, in order to avoid any inconsistencies in interpretation of the Bond Law and the Public School Code as it concerns the proof of the payment owed, the evidence admissible, and the defenses allowed, this case should be transferred to the Commonwealth Court.

Case transferred to Commonwealth Court.

BROSKY, J., files a dissenting opinion.

BROSKY, Judge, dissenting.

Because I conclude that this court can properly exercise its jurisdiction over this appeal, I cannot join in the majority's decision to transfer this case to the Commonwealth Court. Therefore, I must respectfully dissent.

Neither of the parties has objected to the exercise of jurisdiction by this court. Consequently, our jurisdiction has been perfected and this court may address the merits of this appeal even though exclusive jurisdiction is vested in another appellate court. *See* 42 Pa.C.S.A. § 704(a) and Pa.R.A.P., Rule 741(a), 42 Pa.C.S.A. In such cases, this court can exercise its discretion in determining whether the case should be transferred or decided on its merits. *See Newman v. Thorn,* 359 Pa.Super. 274, 280, 518 A.2d 1231, 1233 (1986). *See also,* 42 Pa.C.S.A. § 705 and Pa.R.A.P., Rule 752(a) (which permit this court to consider transferring an appeal on its own motion or upon the motion of any party).

In considering whether to retain jurisdiction, this court has indicated that the interests of the parties and matters of judicial economy must be balanced against other factors

which include: (1) whether our retention of jurisdiction will disrupt the "legislatively ordained division of labor" between the intermediate appellate courts; and (2) whether there is a possibility of establishing two conflicting lines of authority on a particular subject." *Newman*, 359 Pa.Super. at 281, 518 A.2d at 1235. Moreover, each potential transfer must be evaluated on a case-by-case basis. *Id.*

Evaluation of these factors leads me to conclude that we should retain jurisdiction and address the merits of this appeal. The parties in this case have filed briefs and have presented this court with argument on their respective positions. Consequently, the parties will be subjected to additional expense and delay if the appeal is transferred.

More importantly, retention of jurisdiction in this case would not lead to a disruption in the division of labor between the appellate courts. Pursuant to 42 Pa.C.S.A. § 762 of the Judicial Code, the Commonwealth Court has exclusive jurisdiction over cases which involve the application, interpretation or enforcement of any statute regulating the affairs of political subdivisions, municipality and other local authorities or other public corporations or of the officers, employees or agents thereof acting in their official capacity. *See* 42 Pa.C.S.A. § 762(a)(4)(i)(A). The statute applicable to this case is found at 8 P.S. § 194(a), which governs actions on payment bonds. Nothing in this provision regulates the affairs of the school district in this case. In fact, the school district is not a party to this action and will not be affected by the ultimate resolution of this appeal.

Further, application and interpretation of this statute will not lead to conflicting lines of authority. Essentially, 8 P.S. § 194(a) permits claimants, who have supplied labor or materials to a subcontractor or contractor on a public improvement project and who have not been paid therefor, to maintain an action on the payment bond furnished by the contractor. Thus, application of this statute requires a claimant to establish: (1) that labor and/or materials were

furnished by the claimant on a public improvement project; and (2) that the claimant has not received payment for the services or materials which were supplied. There is nothing ambiguous in the statute which requires an analysis of legislative intent or statutory interpretation.[1] Rather, the only matters to be decided under the statute are whether a claimant has proved the elements of his cause of action by sufficient evidence.

It should be observed that this court has proceeded to address similar questions which were presented in appeals involving actions on payment bonds brought under the Public Works Contractors' Bond Law (PWCBL), 8 P.S. §§ 191–202. For example, this court addressed the question of whether the claimant's action was brought within the statute of limitations period prescribed in the PWCBL, 8

1. Although the majority agrees that the statute is unambiguous, it suggests that the statute would necessarily have to be interpreted because there is no settled law on this issue. Majority opinion, *ante,* at n. 1. Contrary to the majority's assertion, there is an existing body of suretyship law which establishes the defenses available to a surety. There is no reason why such law should be deemed inapplicable to a public works bond, as the essential nature of a surety's obligations remains constant. Similar authority exists in ascertaining whether the evidence produced by a party is sufficient to establish the elements of a cause of action. Again, the standard used in determining whether the evidence is sufficient to establish the elements of a cause of action does not vary from case-to-case.

The majority also relies on *Valley Forge Industries v. Armand Construction, Inc.,* 248 Pa.Super. 53, 374 A.2d 1312 (1977) in support of its position. Since *Valley Forge* was decided, this court has steadily retreated from the views expressed therein and has repeatedly proceeded to address the types of issues presented by this case. *See: Lehigh Electrical Products Co., Inc. v. Pennsylvania National Mutual Casualty Insurance Co.; Posh Construction, Inc. v. Simmons & Greer, Inc.; Solomon v. A. Julian, Inc.; Reliance Universal Inc. of Ohio v. Ernest Renda Construction Co., Inc.;* and *Salvino Steel v. Fletcher & Sons, Inc.,* all of which are discussed above. In fact, virtually the same panel members who presided in *Valley Forge* also decided *Lehigh,* in which this court proceeded to address the merits of the appeal instead of transferring the case to the Commonwealth Court as was done in *Valley Forge.* In view of the abrupt change in positions during the time that *Valley Forge* and *Lehigh* was decided, as well as this court's continued retention of cases involving claims brought under the Public Works Contractors' Bond Law, it would appear that *Valley Forge* has been overruled *sub silentio* by this court.

P.S. § 197(b)[2] in *Lehigh Electrical Products Co., Inc. v. Pennsylvania National Mutual Casualty Insurance Co.*, 257 Pa.Super. 198, 201, 390 A.2d 781, 782 (1978). In *Posh Construction, Inc. v. Simmons & Greer, Inc.*, 292 Pa.Super. 142, 436 A.2d 1192 (1981), this court determined that the evidence was sufficient to sustain a finding that a subcontractor was a proper claimant under § 194(b) of the PWCBL. *Id.*, 292 Pa.Super. at 148, 436 A.2d at 1194–1195. This court has also considered whether a surety waived the statute of limitations defense by failing to raise it in its answer and new matter, and whether the claimant was entitled to recover the costs of labor and materials which had been supplied prior to the date of issuance of the payment bond. *See Solomon v. A. Julian, Inc.*, 304 Pa.Super. 119, 124, 450 A.2d 130, 132–133 (1982). In *Reliance Universal Inc. of Ohio v. Ernest Renda Contracting Co., Inc.*, 308 Pa.Super. 98, 454 A.2d 39 (1982) this court concluded that service charges are not recoverable as part of the costs of labor and materials in an action to recover on a payment bond. *Id.*, 308 Pa.Super. at 108–110, 454 A.2d at 44–45. And in a more recent case, this court found that a surety was not responsible for costs or damages resulting from delay in an action on a payment bond. *Salvino Steel v. Fletcher & Sons, Inc.*, 398 Pa.Super. 86, 92, 580 A.2d 853, 856 (1990).

As demonstrated by the above cases, this court has proceeded to address a variety of questions arising under the PWCBL. In comparing the issues raised by appellant with the previous decisions of this court, it is evident that this case does not involve matters which will lead to the development of conflicting lines of authority because the issues raised here relate solely to evidentiary matters with which this court is familiar. Further, our resolution of appellant's claims will not cause a disruption in the distribution of labor between this court and the Commonwealth Court, as the statute at issue here does not regulate or

---

**2.** 8 P.S. § 197(b) was subsequently repealed by the Act of April 28, 1978, P.L. 202, No. 53, § 2(a)[1413], effective June 27, 1978, 42 Pa.C.S.A. § 5523(3).

affect the affairs of the school district.[3] Rather, the statute only governs appellee's ability to recover on the payment bond. Consideration of these factors, as well as the delay and expense which would be caused if the appeal is transferred, require this court to retain jurisdiction and decide the appeal on its merits.[4]

3.  In support of its assertion that the statute in this case regulates the affairs of the school board, the majority relies, in part upon a prior decision of this court which also involved Coco Brothers. *See Coco Brothers., Inc. v. The Board of Public Education of the School District of Pittsburgh,* 383 Pa.Super. 29, 556 A.2d 412 (1989). This decision is distinguishable from the case *sub judice.* First, the statute in *Coco* was not the PWCBL. Rather, *Coco* involved the application of 53 P.S. § 7232, which authorized a particular procedure for offsetting a school district's obligations against any claims made against the school district. *Id.,* 383 Pa.Super. at 31, 556 A.2d at 413. More importantly, the school district was a party in *Coco.* Therefore, any action or resolution of the case would have directly affected the affairs of the school district. Unlike *Coco,* the school district in this case is not a party and will not be affected by the outcome of this appeal.

4.  After reviewing appellant's assertions of error, I would affirm the judgment entered in favor of appellee.